DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 1:07 CR 142 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORADUM OPINION AND ORDER |
| | ) | |
| Willie J. Kemp, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### I.  Introduction

The defendant has been indicted for possession of firearms as a convicted felon.  On April 21, 2007, the defendant filed a motion to suppress.  Docket No. 12.  Specifically, the defendant moved to suppress his statements to law enforcement officials on March 2, 2007 and March 5, 2007, all evidence seized as a result of his arrest on March 2, 2007, including materials seized from his person and motor vehicle on March 2, 2007.

The Court has conducted evidentiary hearings with respect to the motion to suppress on three separate occasions: July 6, July 19 and July 26, 2007.  The thrust of the defendant's motion to suppress is anchored in the proposition that the search of his vehicle and his person was in violation of the defendant's Fourth Amendment rights.  Continuing, the defendant contends that his subsequent incriminating statement was also the product of the unlawful arrest and therefore should be suppressed as fruit of the poison tree.  Following the three evidentiary hearings and the preparation of the transcripts of the three hearings, counsel for both parties have filed additional briefs.  The motion to suppress is now at issue.

(1:07 CR 142)

In response to the defendant's motion, the Court has heard testimony from Lt. Traine of the Cleveland Police Department and Cleveland Police Department Officers Sanders, Jones and Lynch.[1]  Additionally, the Court has listened to the transcripts of radio transmissions on the day of the March 2, 2007 stop of the defendant.[2]  During the hearing conducted on the second day, i.e, July 19 2007, the Court indicated that it wished to hear the testimony of Officer Lynch as he had not testified during the hearing conducted on the first day, i.e, July 6, 2007, and was apparently not available to testify on July 19, 2007.  Consequently, the Court continued the evidentiary hearing to a third day, i.e, July 26, 2007, at which time Officer Lynch[3] and the defendant offered testimony.[4]

The government has filed an initial response to the motion to suppress arguing that the defendant was stopped for multiple traffic violations.  Immediately, the police officers smelled a strong odor of marijuana, located a packet of marijuana on the defendant's person and a subsequent search of his vehicle produced a loaded firearm.  Upon discovery of the firearm, the

---

[1]The testimony of Lt. Traine on the first day of the hearing appears at pages 3 through 24, the testimony of Officer Jones at pages 25 through 56 and the testimony of Officers Sanders at page 57 through 76.

Lt. Traine testified later in the second hearing and his testimony appears at page 94 and 102  through 116.

[2]The transmissions were presented in two separate tapes.  The text of the first tape is found at pages 82 through 88 of the transcript of the second day's hearing and also at pages 96 through 100 as to the second tape.  The Court found it very difficult to understand the voices on the two tapes; however, the two tapes have been admitted as evidence and the court reporter's belief as to what he heard is set forth in the transcript for the benefit of a reviewing court.

[3]The Lynch testimony is set forth in pages 120 through 158 of the transcript.

[4]The testimony of the defendant is set forth at pages 159 through 174 of the transcript.

2

(1:07 CR 142)

officers alleged that the defendant stated: "I know I'm not supposed to have that gun, but I own a store on Clark Avenue and a lot of crazy stuff happens there."

The underlying theme of the defendant's motion to suppress is that the stop of his vehicle was pretextual as the officers were actually looking for weapons based on an informant's tip.

<u>II.  Was the Defendant Lawfully Arrested for Traffic Violations</u>

Initially, the Court is confronted with a pivotal fact issue.  Specifically, Officer Lynch, operating a black and white cruiser for the Cleveland Police Department and while serving on a traffic detail, provided precise testimony to the effect that he observed the defendant drive his vehicle, while merging, onto Martin Luther King Boulevard so as to nearly strike vehicles properly on Martin Luther King Blvd.  Based on that observation, Officer Lynch stopped the vehicle the defendant was driving and issued a citation for reckless operation[5]

The defendant contradicted Officer Lynch's testimony, sketched his own drawing of the area in question and denied that he had engaged in driving which would have justified an arrest for reckless operation.

The testimony of Officer Lynch came after the Court had heard the testimony of Lt. Traine, Officers Sanders and Jones, and had listened to the recordings of the communications between the various officers engaged in the tracking of the defendant's vehicle on March 2, 2007.  It is plainly evident from the testimony of Lt. Traine that Lt. Traine was a party to information from an informant that the defendant appeared to be engaged in possible gun

_____

[5]  In support of his testimony, Officer Lynch prepared a drawing, marked as Court's Exhibit 3, which was admitted into the record and is a helpful exhibit to track Officer Lynch's testimony.

(1:07 CR 142)

trafficking.  Orders went out to surveil the residence where Kemp was located.  When Kemp

began to move in the identified Chrysler, the pursuit of Kemp's vehicle took place and in the

obvious hope that Kemp would engage in a traffic violation sufficient to justify his traffic stop

and the opportunity to question Kemp and possibly search his vehicle.  That goal does not

support the motion to suppress; rather, the Supreme Court has announced that where a police

officer has probable cause to believe that a vehicle has committed a traffic offense, the officer

viewing the traffic offense is entitled to stop the vehicle regardless of the officer's intent or

pretext.  See *Whren v. United States*, 517 U.S. 806 (1996); *Arkansas v. Sullivan*, 532 U.S. 761

(2001).

      In the Court's view, this case presents an issue of credibility.  After considering all of the

testimony of not only Officer Lynch and the defendant, but also the testimony of Traine, Jones

and Sanders and the defendant, the Court finds the testimony of Officer Lynch to be credible.

      Counsel for the defendant has seized upon the testimony of Officer Lynch in which he

described the arrival of his vehicle as well as the vehicle operated by Cleveland Police Officers

Jones and Sanders, and concludes from that testimony that there is no merit to the claim of the

government that Lynch made a lawful stop of the defendant's vehicle for a traffic violation.

      Specifically, the defendant refers to the following testimony of Officer Lynch:

Q.    Did anyone else approach the car before you got there?
A.    I saw the other two officers that were at the car, but I pay attention to what's going on in the car.
Q.    So Jones and Sanders were already at the car?
A.    They were there before I got there, yeah.  (TR 129)

4

(1:07 CR 142)

The defendant's reliance upon the above-described testimony of Officer Lynch does not change the Court's finding that Officer Lynch was credible and that he engaged in a lawful stop for a traffic violation by a defendant.

Early in his testimony, Officer Lynch stated:

Q.    And what happened when you approached the MLK from St. Claire?
A.    When I got on MLK, I turned right and I proceeded northbound, and as I was going northbound by 88th, then I observed the Pacifica come out into traffic, almost struck two cars and then maneuvered itself back in and that's when I activated my overheads and I stopped him.
Q.    Now, when you said – you sort of moved your body on the stand as you said he maneuvered himself; is that what was happening with Mr. Kemp's car?
A.    Yeah.  He swerved.  He almost hit a vehicle that was traveling northbound on MLK and he – when he swerved and almost hit the vehicle, I guess he must have noticed and pulled his car back in and swerved until he got control of it.  It's hard to explain.
Q.    I think when I spoke to you just moments ago in my office, you came up with a description of maybe what it was like; do you remember what that description was?
A.    Okay.  How I explained to him in his office is like if you ever like on a freeway or you're doing something and you look down or you sort of – if you are talking on the phone or something and you swerve over and you get out of your lane and then you try to pull yourself back together.
Q.    If you notice another car beside you?
A.    Right, right.
Q.    So it's one of those jerk reactions?
A.    Jerk reaction.
Q.    Where you're trying to establish your own lane again?
A.    Trying to establish your own lane again, yeah.
Q.    You say you stopped him?  How did you stop him?
A.    At that time, I activated my overheads and my sirens and I stopped him and he stopped.
       THE COURT: This is on Martin Luther King?
       THE WITNESS: Yeah, this is on Martin Luther King going northbound right before I-90, right before the entrance ramp of I-90 westbound.
BY MR. BECKER:
Q.    You're in a black and white car; is that correct?
A.    Yes.
Q.    Now, did other officers join you at the stop?

5

(1:07 CR 142)

| | |
|---|---|
| A. | Yes. |
| Q. | Do you remember who they were? |
| A. | That was Officer Jones and Officer Sanders. |
| A. | And did Lieutenant Traine ever show up, too? |
| A. | Yes, he showed up. |
| Q. | How soon before or after during your stop did the other officers arrive? |
| A. | It was maybe like a second, second and a half. |
| Q. | Pretty simultaneous? |
| A. | Simultaneous. |

(Trans., pg. 126, line 20 through pg. 128, line 19.)

*    *    *    *    *

| | |
|---|---|
| Q. | But you – did you write the traffic citation for Mr. Kemp? |
| A. | Yes, I wrote him two. |
| Q. | Let me show you Government's Exhibit 2 and ask if you can identify that exhibit. |
| A. | Yes, it's a citation that I wrote to him. |
| Q. | Is that your signature on the bottom? |
| A. | Yes. |
| Q. | Did you fill out the entire ticket yourself? |
| A. | Yes. |
| Q. | And there's information there on the driver's license.  Do you remember where you got that information? |
| A. | I don't recall. |
| Q. | If that was on the dispatch tape and the dispatcher is giving you that information, would that be possibly where you got that information from? |
| A. | Yes. |
| Q. | And what did you cite him for on that traffic stop? |
| A. | Failure to yield the right-of-way and operating a motor vehicle with willful and wanton disregard.  It's a reckless op. |
| Q. | Are those infractions that you yourself saw? |
| A. | Yes. |
| Q. | All right.  Are those arrestable infractions? |
| A. | The willful, wanton disregard, yes. |

(Trans., pg. 131, line 14 to pg. 132, line 13.)

In sum, the Court finds that Officer Lynch had cause to make the traffic stop of the

defendant's vehicle.  Consequently, all that followed the stop of Kemp's vehicle by way of search

6

(1:07 CR 142)

and discovery of the offending weapon as well as Kemp's subsequent incriminating admissions, is not subject to suppression.  Consequently, the motion to suppress is DENIED.

IT IS SO ORDERED.

_August 31, 2007_____               ___/s/ David D. Dowd, Jr._____
Date                                     David D. Dowd, Jr.
                                         U.S. District Judge

7